Mr. 13-2288 and 13-2289, Savers Property and Casualty, Patrick Luthal, National Union Fire Insurance. For argument, 15 minutes per side. Mr. Conway for the appellant. Thank you. May it please the Court, I'm Michael Conway on behalf of the Appellant National Union and I'd ask to reserve 5 minutes for rebuttal. Thank you, Your Honor. I'd like to stress three points today in my oral argument and three principal grounds for reversal of the preliminary injunctions. The first is that under the Federal Arbitration Act, the District Court cannot interfere with an ongoing arbitration, especially as no issue exists here that the parties agreed to arbitrate this. Indeed, Meadowbrook, as we've called the appellee here, is the one that initiated the arbitration. And the injunctions barring the panel from completing its work were erroneously entered and should be vacated. That's my first point. The second point I'd like to make today is the District Court was required to but failed to give any deference to the panel's rulings that, first, the resumption of ex-party communications after the issuance of the panel's so-called interim final award were proper under the panel's own procedural rules. And secondly, that the arbitrator Rosen, who'd been appointed by National Union, had made yesterday's, the District Court erred as a matter of law in finding that Meadowbrook had satisfied the elements for issuance of a preliminary injunction, particularly the element of the likelihood of success on a contract claim that Meadowbrook never pled. Turning to the first point, Your Honor, under the Federal Arbitration Act, the District Court can intervene only at two stages. One is before the arbitration commences to decide a gateway issue as to did the parties agree to arbitrate and what was the scope of that arbitration? Or two, after the arbitration is completed under Sections 9 and 10 of the Federal Arbitration Act, either to confirm or vacate an award, but it cannot interfere, as it did here, with an ongoing arbitration or review the arbitrator's rulings on an interlocutory basis. There's broad support for this proposition. This court in the dealer computer case, we cite in our brief at page 29, and the decisions in the guarantee and the Seventh Circuit decisions in Blue Cross Blue Shield and especially Trustmark all hold that. The parties appear to have agreed that Michigan law controls here. What's your view of that? Your Honor, this court in the Ewell decision said that Michigan law and the FAA were identical in all material respects. And secondly, in Note 12, they've indicated they're not really contesting here the application of the FAA. At this time, they may do it subsequently. They're reserving that right. But on this appeal, the FAA jurisprudence would apply. I want to talk about the Trustmark case because it's actually on all fours here. In Trustmark, there was a reinsurance arbitration. It's a Seventh Circuit case. In that case, there was a claim of evident partiality by one of the arbitrators. The dissatisfied party went to the Central District Court in the Northern District of Illinois and got an injunction. That injunction was appealed just as we are here, and the Seventh Circuit reversed the injunction. The Seventh Circuit held the District Court had no authority to intervene in an ongoing arbitration and that the alleged irreparable harm there, which was having to submit itself, complete the arbitration, was not. As a matter of fact, the court said that that argument was frivolous. And the court gave instructions. First of all, it also indicated that the very harm, which is present here, of an accusation about an arbitrator's reputation, about partiality, was damaging to the arbitration process itself because it interferes with the ongoing, supposedly efficient, less expensive, more rapidly completed process of an arbitration. What's the name of that case again? Trustmark, Your Honor. It's cited in our brief. It's listed in our reply brief four and five. It's cited repeatedly. Right. And it's a Seventh Circuit opinion. It's on all fours. Did that case rely on ripeness doctrine? No, it didn't really talk about ripeness itself. It said that under the FAA, I can address ripeness, Your Honor, but under the FAA it said the only time you can seek to vacate the award, if you have gateway issues like the Stolt-Nielsen issue is a gateway issue. Is there class certification? It's not a gateway issue, though. It's not a gateway issue here. Stolt-Nielsen, I mean. Well, Stolt-Nielsen was a class certification issue, and was that for the court to decide or the arbitrator to decide? And so the Stolt-Nielsen case, and, Your Honor, and the Reed-Elson case. Did the Seventh Circuit distinguish the Stolt-Nielsen case? No, because it had no application there because it wasn't a gateway issue. They were trying to review Justice Meadowbrook's case. Did they deal with Stolt-Nielsen at all in the Seventh Circuit? I don't believe they discussed it, Your Honor, but it's a 2011 case, and it's after Stolt-Nielsen was decided. Okay. And because it was the same issue here. Evident partiality is a ground under the FAA Section 10, but you can only bring that after you have completed the panel process. Here, the panel was enjoined by the district court from completing the process, and not just the parties to the arbitration, but the panel members themselves. Stolt-Nielsen, though, Your Honor, didn't change the law because that case dealt with whether or not the parties had agreed to a class-wide relief in arbitration, and this court in the Reed-Elson case said that's a gateway issue. We cited in supplemental authority, Your Honor, the BG Group case versus Argentina that the Supreme Court decided earlier this month on March 5th, and in that case the court went through the analysis of gateway issues of where the court has the authority. Where does this gateway exception come in? Where does that come from? Stolt-Nielsen, and it comes from Your Honor in the Reed-Elson. By gateway, what I mean is did the parties I understand what you mean. I'm just trying to get at where that comes from. Is that a statutory interpretation or is that an equitable doctrine or what is it? It's an interpretation of the role of the court versus the role of the arbitrators. Who gets to decide? Where is that found? In the statute? It's found really if you look at Section 3 of the FAA about whether the parties agreed to arbitrate or Section 2, what is the contractual basis because arbitration is decided by contract. So the issue would be what did the parties agree to? Parties agreed that certain kinds of issues could be reviewed in court and others couldn't? No, it's what did the parties agree to? What did they agree to arbitrate because it's a matter of contract so you can only be bound to arbitrate what you agreed to. So in the class certification context, the issues were did the parties in their agreement envision that you could have a class? Where does it say that you can only review those kinds of issues  It depends on when you can review them, Your Honor. You can only review those issues in Section 2 or 3 before all these cases, including Trustmark and the other cases that deal with what did the parties agree like when there's a motion to compel arbitration? That's in the FAA in Sections 2 or 3. But after the arbitration is ongoing as there is here, there's no issue here that Meadowbrook agreed to arbitrate the three insurance disputes. They initiated the arbitration. So we're in arbitration. Then the question is what did the arbitrators get to decide and when can you go to court? I'm understanding you right. You're telling me what the law is. I'm trying to figure out where you're getting it. It's a different question I'm asking. I'm sorry, Your Honor. We're getting it from the FAA. You lay it out very clearly what you see the law to be. But I'm saying where does that come from? Does the statute provide that or is that just the Supreme Court once did it and so that's how we make sense of it or is it equity or where is this coming from? The statute, the FAA provides that before an arbitration commences, the court can decide in sections two and three what the parties agreed to arbitrate. That's what I'm calling a gateway issue. The gateway is what did you agree to arbitrate? Once it's determined that you agreed to arbitrate, then the BG case and many cases, including the case we cite in our brief about procedural ruling say the arbitrators then get to decide anything within the scope of their own arbitration. And the key point is so long as the arbitrators are constrained. There's procedural limits on that, right? There's procedural limits on that, presumably. I mean fraud and whatever. But you're saying that has to wait until the end. Correct. What tells us it has to wait until the end is my question. Section nine and ten of the FAA Act. And we cited in your Honor that in our brief the cases that say you can intervene, that courts can act only at the beginning and at the end. They're getting that from nine and ten? I'm sorry, Your Honor. Those cases which say you have to intervene at the beginning or the end and that's all, they're getting that from nine and ten? Yes, Your Honor. Okay. And, for example, the Trustmark case, the United Paper Workers case, 484 U.S. 29, all say that the procedural rulings of the arbitrators, they get to decide their own procedure as they go forward. And the BG case that the Supreme Court just decided. What do you do with these DUB cases or whatever, the case that talk about ripeness from our circuit? Sure. Because by negative inference suggests that there might be some cases that aren't at the beginning or at the end. Well. Where they meet the ripeness, whatever it is, then you can hear them. Don't they suggest that? Yes, Your Honor, but I'd say two things about that. The first one is that the ripeness cases apply only to these issues. The only time this Court has talked about the ripeness issue, like in Reed Elsevier or some of the other cases, has been in the context of did the parties agree to a class certification. That's where the ripeness has come up. And you're treating that as a gateway issue. Right. But, secondly, Your Honor, even if we apply the ripeness test here, this is not right. The panel hasn't ruled. We don't know what the panel's ultimate award is going to be. And so until we know what the panel's award is going to be, as this Court said in the dealer case, we don't know what the panel's going to decide. So let's let the panel decide, and then when there's a final ruling, Meadowbrook can come to the district court on a motion to vacate. If they're unhappy with it, we can come to the district court on a motion to confirm, and then there'll be a full record, and we'll know exactly what the panel did. And then that's the way the FAA is designed to operate, Your Honor. Have I responded to Your Honor's question? Thank you. Your initial time has expired a couple minutes ago. Do you wish to rebuttal? Yes, sir. I'll say rebuttal then. Okay. It was in our brief. Thank you, Your Honor. Good morning, Your Honors. Keith Brooks on behalf of the appellees. Your Honor, I believe if you review Trustmark carefully, you'll see it wasn't decided on jurisdictional grounds at all, which is why it doesn't deal with Stolt-Nielsen, but rather assumed jurisdiction but found a lack of irreparable injury. The case citation is 631 Fed Second 689, and the pages in particular I would direct the court's attention to are 871 and 872. So they assumed jurisdiction to decide the issue, and that's why they didn't have to grapple with all due respect with Stolt-Nielsen. The analytical framework Did they say there's no jurisdiction? Pardon me? How did they resolve jurisdiction? They didn't. They didn't. They said there was a lack of irreparable injury. The basis for the reversal in the Trustmark case was a lack of irreparable injury. It wasn't based on lack of jurisdiction. Where did that come from then, that you had to have irreparable injury? Because it was an appeal from an injunction. I'm sorry, Your Honor. The Trustmark is in the Seventh Circuit, and it's an appeal from the grant of a preliminary injunction. And the Seventh Circuit reversed, finding that the district court erred in finding that there would be irreparable injury by awaiting the outcome of the proceeding, and so reversed the grant of the preliminary injunction. Well, they assumed jurisdiction? I think they do. Do we assume jurisdiction here, or must we find jurisdiction before we can do anything? I think we're kind of limited, aren't we? I would respectfully say that Stolt-Nielsen unquestionably established the principle that the judiciary has jurisdiction to intercede at various junctures if certain tests are met, and that this Court's decision in DCS 2, Dealer Computer Services 2, following Stolt-Nielsen, followed that same. So the analytical framework for jurisdiction, it's not new, it's not novel, it's there. And it's the ripeness inquiry, and that's the jurisdictional test. And in this case, I don't think there's any question that those standards are satisfied. Well, he said there is from Section 9 and Section 10 of the FAA. Well, I don't believe. Those aren't jurisdictional provisions, or are they? Pardon me? Those jurisdictional provisions or not? I think we've cited many cases, and I don't believe there's any cases in this circuit or at the Supreme Court level that suggest that the FAA is a jurisdictional statute at all. Right, but I'm not sure which way that cuts for you. If it's not jurisdictional, it's still law, right? So we can not, I'm not suggesting we have to talk about it in terms of whether it's jurisdictional or not. If the FAA applies, and the FAA can be read to say that, and I'm saying if, I'm not saying this is what I would adopt, but I'm trying to understand their argument to get your response. As I understand their argument, as refined, is that the FAA, whether it's jurisdictional or whether it's just the law, the non-jurisdictional binding law, says you just second-guess these arbitration decisions at two stages, unless it's a gateway issue. Now, that's what they're reading out of 9 and 10. It doesn't really answer that to say it's not a jurisdictional issue, or it is a jurisdictional issue. The argument is that's what the scheme provides, and that's what the law is. What's the answer to that? That the word gateway or that concept is not part of the FAA, and I also would note— What about the cases that say that, generally speaking, you wait until the arbitration is completed before you second-guess interim decisions within the arbitration? Sort of like, to me, it's sort of like finality rule that we apply to lower courts. I understood, Your Honor, but none of those cases, none of them deal with arbitrate or misconduct in an arbitration that is not being conducted in accordance with the party's agreement to arbitrate. You look at all of the cases they cited, not one of them deals with that issue. When they talk about— Do you have cases that do deal with that issue that go the other way? We have cases that talk about enjoining arbitrations that are filed in derogation of what the parties agreed to, but on this factual— That's what he's calling gateway. On this factual scenario, the answer is no, Your Honor. In that narrow respect, I believe this is an issue of first impression. But if— Wouldn't it be strange to have a rule? I mean, we're just reading limits into the statute or finding them there. Wouldn't it be strange to have a rule that allows a court to review those kinds of issues before the decision is final, before the arbitral decision is final? I would argue just the opposite, Your Honor. With due respect, if our system of jurisprudence is such that no matter how bad the misconduct, if we have evidence that there's bribery of the panel, that we just have to wait— Isn't that the rule we have for district courts? In most cases, but like with all rules, we have some exceptional cases. For instance, we have the collateral order rule. We have this court imploring the All Writs Act to review, for instance, a district court's refusal to deny a recusal motion. It's like in the criminal law where, as an ordinary matter, we require a warrant to enter somebody's home, but when the officer's walking down the street and hears, Johnny, put down that gun, you're going to hurt somebody, we recognize there has to be exceptions. There has to be exceptional circumstances, and it'd be nice if we could just have this bright-line rule on everything in the world. Three-quarters of us might be out of a job if we had a bright-line rule on everything, but we can't. And in this instance, this is, again, the analytical framework— That's the general rule, though. Only on the merits? Only on the merits, Your Honor. There's a procedural violation that the court can review a non-final arbitration? I am saying, Your Honor, that applying this court's law is enunciated in DCS 2, that if you can satisfy those stringent rightness requirements— remember, this panel, in applying that rightness inquiry, it didn't say, oh, we have no jurisdiction, we have to wait to the end. This court just found that they couldn't satisfy the hardship prong of the rightness inquiry. If you can satisfy those stringent standards, then you have to have a right. We have a situation here in this case where one side of this arbitration has been meeting with one of the arbitrators and has insight to what the panel meant, what they meant by the words interim final award, what they were looking for in these post-hearing submissions, so knowing how to tailor them, knowing how to move to strike ours, and we don't have that. And I say with respect, shame on us if the law is that we have no remedy and you have no power. That's their argument. We have no remedy and you have no power. Judge Roberts had no jurisdictional right to say, we're going to press the pause button and look at what's going on here before this panel issues any further awards. And I say that in exceptional circumstances, when you can meet that rightness test of DCS 2 and Stolt-Nielsen, you should have a right to come into court and attempt to meet that heavy burden. And it is a heavy burden. We had to be... It's heavy it is, though. Pardon me? Like any procedural decision would be ripe once it's made. Well, Your Honor, again, I take you right back to your decision, and by yours I mean the Sixth Circuit and DCS 2. Just because it was ripe doesn't mean the court was going to disturb it or interfere, and, in fact, the court found that you couldn't satisfy the hardship requirement, so they didn't interfere and it went forward. But what the court didn't do is say or adopt some bright-line test that said, no, no, no, we have to wait until this is all over. We can't look at this on an interim basis. And, in fact, this court, I believe it's page 357, I'm doing that from memory, said that there is no bright-line test. There is no test that says you must wait until the end. I would also, Judge Cole, you asked a question about, you know, federal law, and I think this court, I know it's an unpublished decision, but this court's decision in the Muskegon case, which analyzed this issue of is it FAA or Michigan law, and this court found in that case that were the parties' events and intents that Michigan law should apply that in an unambiguous fashion, as they did in this case, and as the district court so found, albeit in the context of a preliminary injunction, that the court should respect that choice of law. In terms of the district court's grant of a preliminary injunction in this case, these are extraordinary facts that clearly warranted the issuance of an injunction, and certainly under, I mean, if we're talking about deference here, the deference here should be to Judge Roberts and her decision to issue a preliminary injunction that, again, did no more than press that pause button so we could look at what was going on here before irreparable injury could be inflicted. And what, again, is the irreparable injury, just that there's been this alleged grievous misconduct on the part of two of these arbitrators? No, Your Honor, the irreparable injury, and she relied on and adopted the president's affidavit, Mr. Cubbon, in terms of the fact that we're not AIG. Meadowbrook is not AIG. An award of the size that the umpire told the court in response to the court's inquiry, we're going to issue a final award by September 20. After AIG's lawyer met with AIG's appointed arbitrator, and after AIG's appointed arbitrator met alone with the umpire, they submitted a post-hearing request for an additional $25 million, 15 times what they asked for at the hearings and in their pre-hearing brief. And what the affidavit of Mr. Cubbon establishes is that an award of that size and being a publicly traded company and having to report that and having the rating agencies further downgrade their rating, their relationships with other reinsurers, with the agents, their injury to their reputation and goodwill and standing in the reinsurance industry would be irreparably injury. That award has not yet been issued, has it? Pardon me? That award has not yet been made, has it? Oh, that was the whole point, Your Honor, was to try to, I mean, frankly. But it's not a final award, is it? The preliminary injunction is. No, I'm not saying the preliminary injunction, the $25 million award. No, no. What this case is about is, frankly, I think this is what Judge Rogers has been trying to get at all morning. What this case is about is do we have to suffer that irreparable injury before we can seek relief, before it's, frankly, too late for us, or can we come in in the mazes we did? Fundamentally, I believe, I may be misreading your questions, but I think that's what. Oh, I think that's it. But it's what we do in court all the time. And, you know, you can have a preliminary award that wipes you out, but it's only, like you say, in extraordinary kinds of narrow areas that you can review a lower court decision before it's final. And you're saying we should use a ripeness analysis to come to the conclusion that we should review this before it's final. I say that the ripeness analysis is the correct analytical framework. And, again, I know I'm somewhat repeating myself, Your Honor, but this is not an issue of review of the merits. This is not an issue of review of partiality. This is an issue of whether or not this arbitration is proceeding in a manner in which the parties did not agree to. They agreed to three, not two. I guess my question still goes back to these are issues that you can raise after the entire process is completed. I can't take issue with that, but, again, we're then at the situation where we have to incur the irreparable injury, and it may or may not be then too late. It's a rather pyrrhic victory to a year or a year and a half later get it vacated on this type of egregious misconduct if the company is out of business. And I'm not saying that the company would be out of business. I'm not saying there was evidence that it would be out of business. But there is what the district court agreed, and this court by its own decisions is to defer to that determination. This court determined that an award of that nature would inflict irreparable injury, and irreparable by definition means it can't be fixed later. This is not a situation where it can be remedied later. And when you can meet that heavy burden, as this court at least determined that we could, then we should have that right. We can't have a bright-line test that says no matter how bad it is, whether the arbitrators have all been bribed, and no matter how much it might signal the death knell, that's a phrase used by this court in DCS2, of a party that we have to wait till the end. I see my time is about up. Does the court have any other questions? No, not at this time. Thank you. Thank you very much, Your Honor. May it please the court. Judge Roberts, I wanted to point out this court's unpublished opinion in the Quicksark case versus Brady that's on page 7 of our reply brief, where the quote is, a district court should not hold itself out as an appellate tribunal during an ongoing arbitration proceeding since application of interlocutory relief results only in a waste of time, the interruption of the arbitration proceeding, and there's an ellipsis, and delaying tactics in a proceeding that is supposed to produce a speedy result. To me, your opposing counsel's argument is that that may generally be true, but is not true as an equitable matter, and if we have jurisdiction in the district court and its discretion finds that there's irreparable injury, that that can be fixed before it's final. That's the nature of his argument, isn't it? Yes, Your Honor. The Trustmark case is exactly the opposite. The Trustmark case did deal with the story. That's not binding on us, for one thing. Pardon me? That's not binding on us. I understand, Your Honor. No, I understand. How do you address his argument? The point is it's not irreparable harm. Going through the arbitration process, as Your Honor indicated, is like going through a trial in the district court. If there's a preliminary finding, you can't appeal that. I'm with you on that. I think that's the logical rubric, but as he points out, that every once in a while you can seek mandamus. If it's really bad, you can seek mandamus. But here, Your Honor, first of all, it completely throws out the whole nature of an arbitration. This has disrupted an arbitration that was going to be completed last September. It's intimidated the arbitrators. If I were an arbitrator and a federal district judge was looking over my shoulder and joining me from acting, and there's no claim, by the way, that the umpire did anything wrong, the neutral arbitrator. The claim is about the party arbitrator, and the Spear-Drake case talks about the unique role of party arbitrators. I'm not sure that's true. There's the argument that they ruled without listening to the third arbitrator. But he did rule because he ruled in the reconsideration on August 29th. He ruled on everything. He ruled on everything after he came back because the same issue was presented. And Meadowbrook presented these issues to the arbitration. Who are you talking about now? Mr. Slabaugh. And he ruled on these issues because Meadowbrook presented a motion for reconsideration on every point, including the points that were ruled upon when Mr. Slabaugh was in Canada, and he ruled on all those. And what they did is they went to the panel first and asked. Then when they got a bad answer from the panel, from their point of view, they went to the district court. They asked the district court to review that, and what's thrown this upside down, Your Honor, is there's been no deference given to the panel. And the one thing that's consistent in this court's cases, the recent case we had about where the court said an unpublished opinion when the arbitrator doesn't even follow Sixth Circuit precedent, the arbitrator's decision still stands because they're attempting to construe the agreement. They were construing their own procedural rules here. And there's no deference being given at all by the district court to this, which would be required to be given if this were a Section 10 case. And so, Your Honor, that's what makes this so important. There is no irreparable harm in finishing, and we're speculating on what the panel is going to decide. Just because a party asked for something doesn't mean they're going to get it. And so there's going to be a ruling, and once we have a ruling, we'll see. Maybe Meadowbrook will be perfectly satisfied with the ruling. Maybe they won't. But at least everybody will know what the rulings are. The district court would know the deference that was to be afforded to this, and then we'd go forward in a normal case. And that kind of limit that you're advocating comes from 9 and 10 of the FAA. And the case law construing it. And the case law construing it. And, Your Honor, just to indicate, we've cited in our brief, it's not just the Quicksare case, Trust Smart case, the Gulf case from the Fifth Circuit held that, Traveler's Insurance in the Seventh Circuit held that, and the Blue Cross of Massachusetts case in the Seventh Circuit held that. And the standard for evident partiality, the Second Circuit said in the Scandinavian Reinsurance, is one of the most onerous standards in the law. And this court has said in the locomotive case that the deference standard is one of the most limited. Now you're getting the merits. I thought you, I mean. Well, but the merits are intertwined here because the district court gave, and it was one of our grounds, she gave no deference to the arbitrator's decision. Your argument would apply no matter how wrong they were. Pardon me, Your Honor? Your argument would apply no matter how wrong they were. Well, if they're construing the agreement. And that's what the Supreme Court said in this case that we just cited. They said we disagree with what the arbitrators ruled that this was, in that case Argentina did something that was completely off limits. But they said we're deferring it because the parties agreed to arbitrate. And, Your Honor, we simply ask that the injunctions be reversed and that the case be sent back with instructions to dismiss the case. Thank you. Okay. Well, thank you, counsel, for your arguments. We appreciate them. The case will be submitted, and you may adjourn court.